# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALAN MURPHY, | Civil Action No. 15-7102 (FLW) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| MIDDLESEX COUNTY, et al., | |
| Defendants. | |

**BONGIOVANNI, Magistrate Judge**

Currently pending before the Court is Plaintiff Alan Murphy's ("Plaintiff") motion to amend the pleadings in order to add the Middlesex County Prosecutor's Office ("MCPO") as a defendant and to assert claims of conspiracy; county and supervisory liability for the deprivation of constitutional rights; and violations of New Jersey's Survivor's Act and Wrongful Death Act against it. Defendant Middlesex County ("Middlesex") has opposed Plaintiff's motion on futility grounds.[1] The Court has fully reviewed the arguments made in support of and in opposition to Plaintiff's motion. The Court considers Plaintiff's motion to amend without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiff's motion to amend to add MCPO as a defendant is GRANTED.

**I.      Background and Procedural History**

This matter involves Plaintiff's claims as general administrator and administrator ad prosequendum of the Estate of Arthur J. Murphy against Middlesex, Warden Edmund Cicchi, Officer Christopher Belinksy, Officer Brian Fogerty, Officer Daniel Marcinkko, Lt. Michael

---

[1] While a heading in Middlesex's letter brief suggests that it also opposed Plaintiff's motion based on undue delay (Def. Ltr. Br. of 9/22/2016 at 4; Docket Entry No. 34), Middlesex does not address undue delay therein. Instead, it only includes a discussion based on the alleged futility of Plaintiff's proposed addition of MCPO. (*Id*. at 4-7).

Domanoski, Officer Eugene Marra, Sgt. Jason Turner, Officer Anthony Porcella, Officer Toby Metzger, Officer John Bartlinksi, Jr., Police Officer Brian Favretto, Police Officer Douglas Turner and John Does 1-10 for alleged violations of decedent, Arthur Murphy's ("Decedent") rights articulated under 42 U.S.C. § 1983, the United States Constitution and the laws and Constitution of the State of New Jersey. The Court assumes the parties are familiar with the nature and history of this litigation and will not recite all those details here. Relevant to this motion is Plaintiff's attempts to obtain discovery regarding MCPO's internal affairs investigation of the Defendants use of force with respect to Decedent, which allegedly resulted in Decedent's death.

Both before the Complaint in this matter was filed and afterwards, Plaintiff attempted to secure discovery that would indicate whether MCPO presented the matter surrounding the use of force and Decedent's death for independent grand jury review, which Plaintiff maintains was required by the compulsory investigative procedures of the Attorney General of the State of New Jersey. In this regard, Plaintiff relies on ¶9 of the New Jersey Attorney Law Enforcement Directive No. 2006-5 (the "Directive"), which states, in relevant part:

> Where the undisputed facts indicate that the use of force was justifiable under the law, a grand jury investigation and/or review will not be required, subject to review by and prior approval of the Division of Criminal Justice, except under Paragraphs 5 and 6 where the final decision will be made by the Attorney General or his designee. In all other circumstances, the matter must be presented to a grand jury.

(Ex. C. to Cert. of Brad M. Russo; Docket Entry No. 33-5).

Unsatisfied with the material produced by Middlesex, which Plaintiff contended failed to establish that the matter involving the use of force on Decedent was either (1) presented to a grand jury as required by the Directive or (2) MCPO's investigation revealed undisputed facts

indicating that the use of force was justifiable and that a grand jury investigation was not required because MCPO's findings were submitted to review by and prior approval of the Division of Criminal Justice, Plaintiff enlisted the Court's assistance. During a telephone conference held on June 29, 2016, the Court instructed Middlesex to confirm whether or not said matter was submitted to a grand jury and, if not, what MCPO did with the close out investigation report, *i.e.*, was it submitted to the Attorney General for a waiver, who contacted the Attorney General and how. On July 15, 2016, Middlesex confirmed that the matter was not presented to a grand jury "because the Prosecutor's Office concluded that no criminal wrongdoing took place." (Ex. B to Cert. of Brad M. Russo at 2; Docket Entry No. 33-4). Middlesex also indicated that "there are no records that indicate whether or not the State Attorney General was contacted and/or consulted in the Middlesex County Prosecutor's Office decision not to present this matter to a Grand Jury." (*Id*.)

Based on Middlesex's representations, Plaintiff sought permission to move to amend his Complaint to add MCPO as a defendant. The Court found good cause to adjust the schedule to permit Plaintiff's motion and ordered that it be filed by September 9, 2016. (*See* Minute Entry of 8/9/2016). Plaintiff complied and filed the instant motion.

As noted above, Middlesex opposes Plaintiff's motion to amend on futility grounds. In this regard, Middlesex raises two futility arguments. First, it contends that Plaintiff's proposed amendments are futile because his proposed conspiracy claim fails to state a claim under Rule 12(b)(6) as it is "the epitome of … 'unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations.'" (Def. Ltr. Br. of 9/22/2016 at 5 (quoting *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007))). Indeed, Middlesex claims that Plaintiff's conspiracy "allegation is an unwarranted inference that stretches conceivability and fails to

establish the plausibility standard enunciated in Twombly, 550 U.S. at 570." (*Id*. at 5-6). Second, Defendant argues that Plaintiff's proposed amendments are futile because MCPO is entitled to absolute immunity with respect to its decision not to proceed with prosecution of law enforcement, a decision Middlesex contends falls "squarely within the MCPO's prosecutorial duties." (*Id*. at 7). For these reasons, Middlesex argues that Plaintiff's motion to amend should be denied.

## II. Analysis

### A. Standard of Review

Pursuant to Rule 15(a)(2), leave to amend the pleadings is generally granted freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Here, the Court focuses on futility as that is the basis for Middlesex's objections.

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). To determine if an amendment is "insufficient on its face," the Court utilizes the motion to dismiss standard under Rule 12(b)(6) (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based

upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief[.]" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Additionally, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka*, 481 F.3d at 211.

**B. Discussion**

Turning first to Plaintiff's conspiracy claim, Plaintiff alleges in relevant part the following:

> ¶16. Pursuant to New Jersey Attorney General Guidelines, this Defendant [MCPO] is responsible for conducting mandatory internal affairs investigations when County law enforcement personnel utilize force which results in serious bodily injury or death, in accordance with New Jersey Attorney General Law Enforcement Directive No. 2006-5.

5

¶17. Defendant MIDDLESEX COUNTY PROSECUTOR'S OFFICE is and was at all times material herein responsible for the implementation of the New Jersey Attorney General directives relating to internal affairs investigations when County law enforcement personnel utilize force which results in serious bodily injury or death, in accordance with New Jersey Attorney General Law Enforcement Directive No. 2006-5.

¶18. Defendant MIDDLESEX COUNTY PROSECUROTR'S OFFICE did conduct an internal affairs investigation regarding the altercation involving ARTHUR MURPHY on November 26, 2013, at the Middlesex County Adult Correctional Center, as required by New Jersey Attorney General Law Enforcement Directive No. 2006-5.

***

¶50. Within hours of the incident, the above corrections officers and jail staff/administration completed various incident reports, use of force forms and provided statements, which, individual and jointly, were in furtherance of concealing the excessive force utilized and depriving Mr. Murphy of his constitutional rights to be free from excessive force and punishment.

¶51. The Middlesex County Prosecutor's Office conducted an internal affairs investigation into this matter.

¶52. This matter involved the use of force by law enforcement involving death or serious injury to a person.

¶53. This investigation was required to be conducted in accordance with New Jersey Attorney General Law Enforcement Directive No. 2006-5.

¶54. Eventually the Internal Affairs Investigation was closed and no wrongdoing was found regarding any law enforcement officer involved.

¶55. Paragraph 9 of the New Jersey Attorney Law Enforcement Directive No. 2006-5, in relevant part, states that "[w]here the undisputed facts indicate that the use of force was justifiable under the law, a grand jury investigation and/or review will not be required, subject to review by and prior approval of the Division of Criminal Justice, except under Paragraphs 5 and 6 where the final decision will be made by the Attorney General or his designee. In

all other circumstances, the matter must be presented to the grand jury."

¶56. Despite the direct requirement to do so, the Middlesex County Prosecutor's Office failed to submit this matter for grand jury review or obtain prior approval from the Division of Criminal Justice.

¶57. Instead the Middlesex County Prosecutor's Office closed the investigation without grand jury review and cleared the officers involved of any wrongdoing. In so doing, the Middlesex County Prosecutor's Office did not allow for any public transparency, oversight or independent review into their investigation of the incident and ensured that the corrections officer's conduct would not be disciplined.

***

¶87. On November 25, 2013,[2] Defendants OFFICER CHRISTOPHER BELINSKY, OFFICER BRIAN FOGARTY, OFFICER DANIEL MARCINKO, LT. MICHAEL DOMANOSKI, LT. EUGENE MARRA, SGT. JASON TURNER, OFFICER ANTHONY PORCELLA, OFFICER TOBY METZGER, OFFICER JOHN BARTLINSKI, JR. and the Middlesex County Prosecutor's Office, planned and/or otherwise agree to conspire to violate Mr. Murphy's Fourth and Fourteenth Amendment rights to be free from the use of excessive force and pre-conviction punishment and also conspired to cover-up, not fully investigate and/or violate mandatory investigatory protocol to ensure those involved would not be disciplined.

¶88. The conspiracy formed or began when Mr. Murphy was deemed 'uncooperative' during portions of the intake process such as fingerprinting and answering certain intake questions. In retaliation for being uncooperative, the Defendants escorted Mr. Murphy to a small room 'change out' room, devoid of video surveillance, for the purpose of conducting a strip search. Approximately seven (7) corrections officers were dispatched and congregated in the small 'change out' room to observe the strip search of Mr. Murphy.

¶89. Without any provocation beyond the apparent contention that Mr. Murphy 'clenched his fists', he was violently taken to the

---

[2] The Court notes that in earlier allegations, Plaintiff referenced November 26, 2013 but in the following ones he references November 25, 2013.

ground and into the prone position. While face first on the ground, approximately nine (9) corrections officers positioned themselves on top and alongside Mr. Murphy and exploited the vulnerable and defenseless position of Mr. Murphy by utilizing various forms of force upon his body, including slamming his head to the concrete floor, closed hand strikes, oleoresin capsicum (OC) spray, compliance holds and the placement of a 'spit mask' over his face.

¶90. On the apparent basis that Mr. Murphy was face down with nine officers on and around his body, yet able to 'swing his arms, punch and kick officers', force continued to be utilized until Mr. Murphy was unresponsive.

¶91. It was not until the officers physically removed Mr. Murphy's pants and were physically installing a prison jumpsuit that Mr. Murphy was determined to be 'unresponsive'. At this point, Mr. Murphy was fully secured with handcuffs and blood was reported to be flowing from his mouth.

¶92. During each infliction of force against Mr. Murphy, the defendant corrections officers would either act directly in concert or match each other's violence with further unnecessary escalation by the other.

¶93. At no point on November 25, 2013, did any officer involved attempt to prevent or curtail the other officers' utilization of excessive force.

¶94. At no point on November 25, 2013, did any officer involved attempt to protect Mr. Murphy from the violent attacks of each respective officer.

¶95. On November 25, 2013, the above defendants acted in concert with the specific intent and general conspiratorial objective of utilizing excessive force and punishing Mr. Murphy for being 'uncooperative'.

¶96. Within hours of the incident, the above corrections officers completed various incident reports, use of force forms and provided statements, which, individual and jointly, were in furtherance of concealing the excessive force utilized and depriving Mr. Murphy of his constitutional rights to be free from excessive force and punishment.

¶97. Within hours of the incident, members of the Middlesex County Prosecutor's Office began conducting an investigation into

the incident as required by New Jersey Attorney General Law Enforcement Directive No. 2006-5.

¶98. Paragraph 9 of the New Jersey Attorney Law Enforcement Directive No. 2006-5, in relevant part, states that "[w]here the undisputed facts indicate that the use of force was justifiable under the law, a grand jury investigation and/or review will not be required, subject to review by and prior approval of the Division of Criminal Justice, except under Paragraphs 5 and 6 where the final decision will be made by the Attorney General or his designee. In all other circumstances, the matter must be presented to the grand jury."

¶99. Despite the direct requirement to do so, the Middlesex County Prosecutor's Office failed to submit this matter for grand jury review or obtain prior approval from the Division of Criminal Justice.

¶100. Instead the Middlesex County Prosecutor's Office closed the investigation without grand jury review and cleared the officers involved of any wrongdoing. In so doing, the Middlesex County Prosecutor's Office did not allow for any public transparency, oversight or independent review into their investigation of the incident.

¶101. The decision to violate required investigative protocol was for the purpose of shielding the officers involved from exposure to discipline and/or criminal liability.

¶102. The decision to violate required investigative protocol was pursuant to an inferred agreement with the officers involved in shielding them from exposure to discipline and/or criminal liability. The decision to violate required investigative protocol was in furtherance of the overall conspiratorial objective to violate the Decedent's constitutional rights and cover-up the wrongdoing of the officers involved.

(Pl. Proposed Amended Cmplt.; Ex. A to Cert. of Brad M. Russo; Docket Entry No. 33-3).

The Court finds Plaintiff's inference that MCPO's failure to comply with ¶9 of the Directive arose from an agreement with the officers to shield them from discipline and/or criminal liability to be justified based on the facts pled in the proposed Amended Complaint. As

detailed above, Plaintiff alleges that a directive was in place that required incidents involving law enforcement's use of deadly force or force that resulted in serious bodily injury to either be presented to a grand jury or, where the use of force was indisputably justified, reviewed by the Division of Criminal Justice.  Plaintiff further alleges that MCPO never presented Defendants' use of force on Decedent to a grand jury, nor did MCPO obtain the Division of Criminal Justice's review of Defendants' use of force or its prior approval not to submit the incident to a grand jury.  Plaintiff alleges that MCPO's failure to comply with ¶9 of the Directive resulted in MCPO's investigation of the use of force on Decedent not being independently reviewed.  Plaintiff then infers that MCPO reached this decision, *i.e.*, the decision to not comply with the Directive, based on a tacit agreement with the officers to protect them from discipline and/or criminal liability.  Under the circumstances of this case, this is a reasonable inference supported by the facts alleged by Plaintiff.

Whether Plaintiff will ultimately succeed on his conspiracy claim is a question for another day.  The Court's concern now is whether "under any reasonable reading of the complaint, the plaintiff may be entitled to relief[.]"  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  In other words, has Plaintiff "plead 'enough facts to state a claim to relief that is plausible on its face[.]'"  *Duran*, 2010 WL 918444, at *2 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).  For the reasons set forth above, the Court finds that Plaintiff has.

Thus, the Court turns to Middlesex's second argument that even if Plaintiff's allegations are sufficient to state a claim, they are nevertheless futile because MCPO is entitled to absolute immunity.  The "official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."  *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).  Further, "[t]he presumption is that qualified rather than absolute

immunity is sufficient to protect government officials in the exercise of their duties." *Id*. At 486-87. As a result, the Supreme Court has been "'quite sparing' in [its] recognition of abosulte immunity[.]" *Id.* At 487 (quoting *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

"To overcome the presumption" that only qualified immunity applies, "a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). This analysis focuses on "the nature of the function performed, not the identity of the actor who performed it." *Forrester*, 484 U.S. at 229; *Odd*, 538 F.3d at 208. Absolute immunity will therefore protect prosecutors from liability under §1983 for conduct "intimately associated with the judicial phase of the criminal process[.]" *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). It does not, however, apply to "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings[.]" *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (citing *Burns*, 500 U.S. at 494-96). The key is whether or not a prosecutor is functioning in "his role as advocate for the State" when undertaking the actions in question. *Id*. at 273. If the answer to this question is yes, then absolute immunity applies. *Id*. If not, then the prosecutor is entitled to only qualified immunity, "the norm for executive officers[.]" *Id*. (internal quotation marks and citations omitted).

While "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom[,]" preparing for same will inevitably require a prosecutor to obtain, review and evaluate evidence, and, "at some point, with respect to some [of these] decisions, the prosecutor no doubt functions as an

administrator rather than as an officer of the court." (*Imbler*, 424 at 431, n.33). As noted in *Burns*, "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute[.]" 500 U.S. at 495. Indeed, "almost any action by a prosecutor, including the dispatch of purely administrative tasks, can said to be in some way related to more central prosecutorial functions." *Odd*, 538 F.3d at 213. However, absolute immunity has never been found to be that expansive. *Burns*, 500 U.S. at 495.

While there is no bright line in determining whether a prosecutor is acting as an advocate versus an administrator, courts have found "the timing of the prosecutor's actions to be relevant in determining their nature[.] *Odd*, 538 F.3d at 213. As such, the Third Circuit has noted that "pre-indictment and post-conviction actions are more likely administrative than advocative." *Id*. Further, the Supreme Court has noted that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274.

In the end, however, whether a prosecutor is functioning as an advocate or administrator often presents a difficult, case specific question. *See Imbler*, 424 U.S. at 432, n. 33 (noting difficulty in likely associated with distinguishing between prosecutor's functions). In order to draw "a proper line between" a prosecutor's function as advocate for the state and administrator (*Id.*), the Court must "narrowly define the act at issue." *Odd*, 538 F.3d at 213. Here, Middlesex defines the act as MCPO's decision "whether to prosecute, i.e., present the matter before a grand jury[.]" (Def. Ltr. Br. of 9/22/2016 at 7). In contrast, Plaintiff defines the act as MCPO's failure to follow the compulsory procedures set forth in the Directive. Under the circumstances of this case, the Court finds Plaintiff's definition to be more appropriate. Middlesex bears the burden of

establishing that it is entitled to absolute immunity. Middlesex's definition fails to address the fact that, as Plaintiff notes, according to the Directive, MCPO lacked discretion in determining whether to present its investigation of the officers' use of force to a grand jury. Instead, according to the Directive, the only discretion MCPO had was in deciding whether to submit the matter to a grand jury or to the Division of Criminal Justice for its review and prior approval to bypass a grand jury. According to the Directive, MCPO had no discretion to refuse both options and simply close the investigation based on its own determination of no wrongdoing.

Having adopted Plaintiff's characterization of the act at issue, it follows that MCPO is not entitled to absolute immunity. MCPO's investigation of the officers' use of force against Decedent was exactly that, an investigation. In light of the Directive, no advocacy was required on MCPO's part.

The Court's decision in this regard is further supported by the policy considerations underlying prosecutorial absolute immunity. In this regard, in deciding "whether to extend absolute immunity under § 1983, the Supreme Court considers whether: (1) there is a common law tradition of according immunity in similar situations; (2) denying immunity would subject the prosecutor to the chilling influence of vexatious lawsuits; and (3) there exist adequate checks on prosecutorial abuse other than individual suits against the prosecutor." *Odd*, 538 F.3d at 216 (citations omitted). Here, Middlesex, who bears the burden of proof, did not identify a common law tradition of extending absolute immunity to a prosecutor who fails to follow a mandatory directive governing its investigation of the use of deadly force or force that results in serious bodily injury. Second, as in *Odd*, "it is unlikely that denying absolute immunity . . . would interfere with [MCPO's] independent decisionmaking by exposing them to vexatious litigation" because accepting Plaintiff's allegations as true, as the Court must, MCPO "had no decisions to

make" but was required to abide by the Directive. *Id*. Third, under the circumstances of this case, absent an individual suit against the MCPO, there is no adequate check on the potential for prosecutorial abuse resulting from MCPO's failure to follow the Directive.

## III. Conclusion

For the reasons stated above, Plaintiff's motion to amend is GRANTED. An appropriate Order follows.

Dated: April 13, 2017

s/ Tonianne J. Bongiovanni  
**HONORABLE TONIANNE J. BONGIOVANNI**  
**UNITED STATES MAGISTRATE JUDGE**