**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| ALAN MURPHY, AS ADMINSTRATOR | : | |
| OF THE ESTATE OF ARTHUR J. | : | |
| MURPHY, DECEASED, | : | |
| | : | Civ. Action No. 15-7102(FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| MIDDLESEX COUNTY, WARDEN | : | |
| EDMUND CICCHI, OFFICER | : | |
| CHRISTOPHER BELINSKY, OFFICER | : | |
| BRIAN FOGARTY, OFFICER DANIEL | : | |
| MARCINKO, LT. MICHAEL | : | |
| DOMANOSKI, SGT. JASON TURNER, | : | |
| OFFICER ANTHONY PORCELLA, | : | |
| OFFICER TOBY METGZER, OFFICER | : | |
| JOHN BARTLINSKI, JR., POLICE | : | |
| OFFICER BRIAN FAVRETTO, POLICE | : | |
| OFFICER DOUGLAS TURNER AND | : | |
| JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

_____:

**WOLFSON, U.S. District Judge**:

### I.     INTRODUCTION

Plaintiff, Alan Murphy, as general administrator and administrator ad prosequendum of

the Estate of Arthur J. Murphy ("Decedent" or "Mr. Murphy"), brings this action against

Middlesex County, Warden Edmund Cicchi, Officer Christopher Belinsky, Officer Brian

Fogarty, Officer Daniel Marcinko, Lt. Michael Domanoski, Officer Eugene Marra, Sgt. Jason

Turner, Officer Anthony Porcella, Officer Toby Metgzer, Officer John Bartlinski, Jr., Police

Officer Brian Favretto, Police Officer Douglas Turner, and John Does 1-10, for alleged

violations of Decedent's, federal constitutional and civil rights guaranteed under 42 U.S.C. §

1983, the United States Constitution, and the Constitution of the State of New Jersey. Plaintiff then filed an Amended Complaint in this case to add Middlesex County Prosecutor's Office ("MCPO") as a Defendant, and asserted claims for conspiracy, county and supervisory liability for deprivation of constitutional rights, and wrongful death/survivorship.[1] Presently before the Court is MCPO's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing, in relevant part, that Eleventh Amendment sovereign immunity bars all claims against the MCPO and that MCPO is not a "person" amenable to suit under 42 U.S.C. § 1983.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 26, 2013, Arthur Murphy was homeless and sought shelter in an abandoned building in Edison, New Jersey. (Am. Compl., ¶¶ 19-22.) Officers from the Edison Township Police Department removed Mr. Murphy from the building and located a shelter for him to spend the night. (*Id. at* ¶ 31.) When Mr. Murphy declined transport to the shelter, the Edison Police officers charged him with criminal trespass pursuant to N.J.S.A. 2C:18-3(a) and transported him to the Middlesex County Adult Corrections Center ("MCACC"). (*Id. at* ¶ 33.)

Upon Mr. Murphy's arrival at MCACC, he answered general intake questions but refused to be fingerprinted. In response to Mr. Murphy being uncooperative, Mr. Murphy was escorted to a small "change-out room," where there were no cameras or video surveillance, for purposes of undergoing a strip search. (*Id. at* ¶¶ 35-37.) Seven corrections officers were dispatched and congregated in the small room to observe the strip search of Mr. Murphy. (*Id. at* ¶¶ 38.) An altercation ensued when Mr. Murphy "clenched his fists," in response to which, approximately

---

[1] In its opposition papers, Plaintiff withdrew its state law claims and concedes that only the federal causes of action should be at issue. (*See* ECF No. 52, Opp. Brief at 25.) As such, the Court does not discuss them further.

nine corrections officers positioned themselves on top of and alongside Mr. Murphy and employed force to subdue him, until he was unresponsive. (*Id.* at ¶¶ 39-41.) The altercation resulted in Mr. Murphy sustaining trauma to his body, losing consciousness, and dying. (*Id.* at ¶¶ 44.)

The MCPO subsequently undertook an internal affairs investigation, as is required by Attorney General Law Enforcement Directive No.: 2006-5 ("A.G. Directive"), which mandates investigation "of any use of force by law enforcement officer involving death or serious injury to a person where the law enforcement officer [is] employed by a municipal or county agency" to be investigated by "the County Prosecutor's Office in the County of occurrence." (*Id.* at ¶ 50, A.G. Directive No. 2006-5.) The internal affairs investigation closed finding that no officer had engaged in any wrongdoing. (Am. Compl., ¶ 53.)

The same A.G. Directive mandates submitting the matter to a grand jury in all but two situations, wherein the Attorney General exempts the matter from grand jury review. (*Id.* at ¶¶ 54-56, A.G. Directive No. 2006-5 at ¶ 9.) After concluding that no wrongdoing had taken place, the MCPO failed to follow the other instructions of the same directive. (*Id.* at ¶¶ 54-56, 95-99.) The MCPO neither submitted the matter to a grand jury for review nor submitted the matter to the Attorney General for exemption. (*Id.*) The MCPO failed to follow the directive as part of an alleged cover up of the use of excessive force against Mr. Murphy, (*id.* at ¶¶ 100-102), and allegedly had engaged in this similar wrongdoing with respect to other investigations of excessive force. (*Id.* at ¶¶ 115, 118.)

Mr. Murphy's estate initially filed suit on September 25, 2015, against the individual police officers who were involved in the incident, for wrongful death and violation of Mr. Murphy's constitutional rights. Plaintiff later filed a Motion for Leave to Amend the Complaint,

to name the MCPO as a defendant.  After the motion was granted, Plaintiff filed an Amended Complaint on April 21, 2017, which asserted claims for conspiracy, county and supervisory liability for deprivation of constitutional rights, and wrongful death/survivorship.  Plaintiff's claims against the MCPO stem from the MCPO's failure to follow investigatory protocol and submit the matter involving Mr. Murphy to a grand jury or to the Attorney General. The MCPO filed the instant motion to dismiss the Amended Complaint in lieu of an answer.  The matter is fully briefed and ready for disposition.

## III.   STANDARD OF REVIEW

### a.  Rule 12(b)(1) Standard

Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if the court lacks subject matter jurisdiction to hear a claim.  Fed. R. Civ. P. 12(b)(1)).  This type of motion permits a party to raise the issue of Eleventh Amendment immunity at the earliest stage of litigation.  *In Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996), the Third Circuit Court of Appeals noted that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Id.* at 694 n. 2 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)).  The court in *Blanciak* added that Rule 12(b)(1) was the proper means of raising the issue of whether the Eleventh Amendment bars federal jurisdiction.  *Id.*

### b.  Rule 12(b)(6) Standard

Fed. R. Civ. P. 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  The facts must be read in

the light most favorable to the plaintiff and all reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). To survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). When assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Legal conclusions are "not entitled to the assumption of truth" by the court. *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id. See also Fowler*, 578 F.3d at 210 (explaining that a proper complaint "must do more than allege a plaintiff's entitlement to relief"). Yet, in a case "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal quotation omitted). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).

## IV.    ANALYSIS

### a.  Sovereign Immunity

The MCPO moves to dismiss all claims against it on the grounds of Eleventh Amendment sovereign immunity.  This argument challenges the Court's subject matter jurisdiction, and therefore is determined pursuant to Federal Rule of Civil Procedure 12(b)(1). *Bianciak*, 77 F.3d at 693 n.2.  Courts treat Eleventh Amendment immunity as an affirmative defense, and "the party asserting [it] bears the burden of proving entitlement to it." *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995).

Plaintiff's opposition to Defendant's motion to dismiss relies on two primary arguments.  First, Plaintiff relies on the Magistrate Judge's prior ruling about prosecutorial immunity in granting Plaintiff's motion to amend.  Second, Plaintiff argues that the MCPO's actions (or inaction) at issue here are administrative rather than investigatory.  Plaintiff contends that the MCPO's failure to follow the Attorney General Directive renders sovereign immunity unavailable because the MCPO acted in a county-level capacity rather than a state-level capacity.[2]

First, Plaintiff's reliance on the Magistrate Judge's opinion is misplaced.  The Magistrate Judge's memorandum opinion turned on whether Plaintiff would be permitted to amend the pleadings to add MCPO as a defendant.[3]  *See Murphy v. Middlesex Cnty.*, No. 15-7102, 2017 U.S. Dist. LEXIS 56663 (D.N.J. Apr. 13, 2017).  In opposing Plaintiff's motion, the MCPO

---

[2] For the same reasons, Plaintiff contends that the MCPO is a person amenable to suit under § 1983, and the Court considers those arguments in the next section.

[3] The Magistrate Judge's prior ruling is not binding on this Court and does not inform this Court's analysis of sovereign immunity or personhood under § 1983.

asserted that it was immune to suit because of absolute immunity in the context of <u>prosecutorial</u> immunity.

Analysis of prosecutorial immunity questions has two basic steps that may overlap. The court must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served. *See Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011).[4]

The Third Circuit assigns a "heavy burden" of establishing absolute immunity to the prosecutor, *Light v. Haws*, 472 F.3d 74, 80–81 (3d Cir. 2007), beginning from a presumption that the lesser protection of qualified immunity applies. *Odd v. Malone*, 538 F.3d 202, 207–08 (3d Cir. 2008). Thus, prosecutors enjoy absolute immunity from § 1983 claims only for "activities ... <u>intimately associated with the judicial phase of the criminal process</u> ..." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (emphasis added), and qualified immunity when "acting in an investigative or administrative capacity...." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992) (citing *Imbler*, 424 U.S. at 430; *Burns v. Reed*, 500 U.S. 478 (1991)). Courts must engage a " 'functional' analysis," *Giuffre v. Bissell*, 31 F.3d 1241, 1251 (3d Cir. 1994), to determine whether the prosecutor "was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006) ("…a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question…immunity attaches to actions 'intimately

---

[4] Plaintiff's reliance on *Schneyder v. Smith,* 653 F.3d 313 (3d Cir. 2011), is particularly misplaced. In *Schneyder,* the plaintiff was an uncooperative witness in a criminal proceeding, who was later incarcerated for trial purposes for an extended period of time. *Id.* at 316. *In Schneyder,* the Third Circuit held that the prosecutor was not entitled to prosecutorial immunity, reasoning in part that, in Pennsylvania, monitoring material witnesses was the responsibility of the District Attorney's office, and thus, a local matter. *Id.* at 322.

associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.").

Sovereign immunity requires a different analysis that turns on similar, but separate, issues. *See, e.g.*, *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655 (3d Cir. 1989); *see also Duffy v. Freed*, No. 09-2978, 2010 U.S. Dist. LEXIS 98860, at *6 (D.N.J. Sept. 17, 2010) ("Governmental function immunity [such as prosecutorial immunity] is not derived from sovereign immunity."). Sovereign immunity exists to afford states "the dignity that is consistent with their status as sovereign entities," and protects their treasuries. *Id.* (quoting *Fed. Maritime Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743 (2002)). Suits against state officials in their personal capacities do not undermine the state's dignity or treasury; these personal capacity suits can, however, undercut the rule of law by encouraging officials to act in a manner that is overly cautious. *Id.* To shield government officials from undue influence, the doctrine of governmental immunity, such as prosecutorial immunity, has evolved concurrently with the doctrine of sovereign immunity. *Id.* at *6-7. While sovereign immunity applies only to official capacity suits, governmental immunity, such as prosecutorial immunity, applies only to personal capacity suits. *Id.* at *7.

At issue in this motion is whether the MCPO is entitled to sovereign immunity pursuant to the Eleventh Amendment. The Eleventh Amendment grants immunity to the states from suit in federal court unless Congress has abrogated that immunity or the State has waived it.[5] U.S. Amend. XI; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). This immunity extends to state agencies and state officers acting in their official capacities who act on behalf of the state, *see Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997), when "the state is

---

[5] The Court does not address the issue of waiver, because Plaintiff has not raised it.

the real party in interest" despite the named parties being a state agency or officer.[6]  *Fitchik*, 873 F.2d at 659.

In *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (*en banc*), the Third Circuit laid out a three-factor test for sovereign immunity that still governs today. "[T]he Fitchik factors are (1) the funding factor: whether the state treasury is legally responsible for an adverse judgment entered against the alleged arm of the State; (2) the status under state law factor: whether the entity is treated as an arm of the State under state case law and statutes; and (3) the autonomy factor: whether, based largely on the structure of its internal governance, the entity retains significant autonomy from state control." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016) (citing *Fitchik*, 873 F.2d at 659).  Notably, in *Estate of Lagno v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 857-858 (3d Cir. 2014), the Third Circuit reiterated that *Fitchik* controls Eleventh Amendment analysis, and held that District Courts may <u>not</u> find that the *Fitchik* factors are satisfied anytime the a county prosecutor engages in classic prosecutorial or investigative functions, *id.* (reversing District Court grant of Eleventh Amendment immunity and remanding for analysis of Eleventh Amendment immunity under *Fitchik*), which is the test for "personhood" under § 1983. *See Coleman v. Kaye*, 87 F.3d 1491 (3d Cir. 1996).[7]  Thus, in order to be entitled to Eleventh Amendment immunity, the MCPO must satisfy the *Fitchik* factors.

---

[6] The Eleventh Amendment does not preclude suits brought against State officials in their personal capacities, however, even if the challenged conduct was part of their official responsibilities. *Hof v. Janci*, No. CV 17-295, 2017 WL 3923296, at *3 (D.N.J. Sept. 7, 2017)(citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)). *Munchinski v. Solomon*, 618 F. App'x 150, 156 (3d Cir. 2015) ("Since Munchinski has sued the Prosecutors in their individual capacities, Eleventh Amendment immunity does not apply.").

[7] In *Coleman v. Kaye*, 87 F.3d 1491 (3d Cir. 1996), the Third Circuit held that "when New Jersey prosecutors engage in classic law enforcement and investigative functions, they act as Officers of the State", but when county prosecutors perform administrative functions unrelated to the duties

The first *Fitchik* factor is the source of the funds to pay for the judgment. *Fitchik*, 873 F.3d at 659. This is the most important of the three factors. *Id.* Under this factor, the Court must determine if the State is financially responsible for a judgment against the MCPO. In *Wright v. State*, 169 N.J. 422, 454-55 (2001), the Supreme Court of New Jersey held that the State was required to provide defense and indemnification to county prosecutor's office employees engaged in law enforcement activities as part of a State task force, and reached that result due to the unique "hybrid" statutory relationship between the Attorney General and county prosecutors' offices:

> The position of county prosecutor was created for the purpose of prosecuting "[t]he criminal business of the State," N.J.S.A. 2A:158-4, and "the Attorney General [is the] chief law enforcement officer," who "maintain[s] a general supervision" and control over all of the county prosecutors. N.J.S.A. 52:17B-98; N.J.S .A. 52:17B-103.
>
> ....
>
> We are persuaded that when county prosecutors and their subordinates are involved in the investigation and enforcement of the State's criminal laws, they perform a function that has traditionally been the responsibility of the State and for which Attorney General is ultimately answerable. In our view, the State should be obligated to pay the county prosecutors and their subordinates' defense costs and to indemnify them if their alleged misconduct involved the State function of investigation and enforcement of the criminal laws. *See DeLisa [v. Co. of Bergen]*, 326 N.J.Super. [32,] 40 [ (App. Div. 1999) ] (stating that "[a] County Prosecutor is 'a State officer,' and under our case law, the State may be obligated to defend and pay for actionable civil

---

involved in criminal prosecutions," they act as county officials. *Id.* at 1505-06. As explained in the next section, this analysis applies when analyzing whether an entity or its officials acting in their official capacity are "persons" under § 1983. *See Estate of Lagano*, 769 F.3d at 855. In at least one unpublished opinion, the Third Circuit has stated that *Coleman* "essentially analyzed the same factors presented in *Fitchik*" as support for the District Court's conclusion that *Fitchik* is satisfied anytime county prosecutors act as arms of the state by performing classic prosecutorial functions. *See Beightler v. Office of the Essex Cnty. Prosecutor*, 342 F. App'x 829, 832 (3d. Cir. 2009). In *Estate of Lagano*, however, a different panel of the Third Circuit rejected this analysis in a published opinion and reiterated that *Fitchik*, and not *Coleman*, controls the Eleventh Amendment analysis. 769 F.3d at 857-58.

> wrongdoing by the County Prosecutor while acting as a law
> enforcement officer") (citation omitted).
>
> ....
>
> We acknowledge that the Legislature intended a sharp
> distinction between State employees and employees of other public
> entities that may be indemnified by such entities, but that
> distinction did not contemplate public employees, such as county
> prosecutors, who have a hybrid status. We are persuaded that the
> statutory language used in N.J.S.A. 59:1-3 did not take into
> account the unique role of county prosecutorial employees, paid by
> the county, but performing a State law enforcement function.

*Id.* at 454-56.

Thus, although county prosecutors act as agents for both the State and the county that is

the situs of their office, the State is obligated to pay "the county prosecutors and their

subordinates' defense costs and to indemnify them if their alleged misconduct involved the State

function of investigation and enforcement of the criminal laws." *Id.* at 455. On the other hand,

"when county prosecutors are called upon to perform administrative tasks unrelated to their

strictly prosecutorial functions, such as a decision whether to promote an investigator," then the

county prosecutor acts on behalf of the county and is not entitled to indemnification by the State.

*See id.* at 454; *see also Pitman v. Ottehberg*, No. CIV. 10-2538 NLH/KMW, 2015 WL 179392,

at *6 (D.N.J. Jan. 14, 2015) (explaining same); *Hof v. Janci*, No. CV 17-295, 2017 WL 3923296,

at *3 (D.N.J. Sept. 7, 2017) (same).

As explained by the New Jersey Supreme Court in *Wright*, "[t]he State's duty to

indemnify and defend county prosecutors and their subordinates is limited to acts or omissions

that do <u>not</u> involve actual fraud, actual malice or willful misconduct. 169 N.J. at 456, (citing

N.J.S.A. 59:10A and N.J.S.A. 59:10–2); *Hyatt v. Cty. of Passaic*, 340 F. App'x. 833, 837 (3d

Cir. 2009) (noting that the Attorney General may refuse to indemnify under N.J.S.A. § 59-10A-2

if the act resulted from willful misconduct or actual malice). The New Jersey Supreme Court has

held that the State's obligations to defend and indemnify under N.J.S.A. § 59:10A–1 are "wedded together." *Wright*, 778 A.2d at 444–5. More specifically, the State must "indemnify employees for whom a defense is provided." *Id.* at 444 (citing N.J.S.A. § 59:10A–1); *see also Hof v. Janci*, No. CV 17-295, 2017 WL 3923296, at *3 (D.N.J. Sept. 7, 2017)(explaining same).

The second *Fitchik* factor is the status of the agency under state law. The focus of the second factor is "whether state law treats an agency as independent, or as a surrogate for the state." *Fitchik*, 873 F.2d at 662. The office of the county prosecutor is established by the New Jersey Constitution, N.J. Const. art. VII, § 2, ¶ 1. County prosecutors are "appointed by the Governor with the advice and consent of the [State] Senate." N.J. Const. art. VII, § II.1. "'The criminal business of the State' of New Jersey is 'prosecuted by the Attorney General and the county prosecutors.'" *In re Camden Police Cases*, 2011 WL 3651318, at *8 (D.N.J. Aug. 18, 2011) (citing N.J.S.A. § 2A:158–4). As explained above, however, county prosecutor's offices in New Jersey hold a "hybrid" status as both arms of the state and arms of the county, depending on the activity at issue. *See Wright*, 169 N.J. at 441 (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d. Cir. 1996)). The New Jersey Supreme Court more fully explained the hybrid status of prosecutors and their subordinates as follows:

> It is well established that when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.

*Id.* at 450 (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir.1996)). Thus, "[u]nder New Jersey law, when county prosecutors and their subordinates perform law enforcement and

prosecutorial functions, 'they act as agents of the state.'" *Hyatt v. Cty. of Passaic*, 340 F. App'x. 833, 836 (3d Cir. 2009) (citing *Wright*, 169 N.J. at 450-51); *Hof*, 2017 WL 3923296, at *4.

The third *Fitchik* factor is the agency's degree of autonomy. County Prosecutor's offices and their employees are subject to supervision and supersession by the Attorney General when engaged in "the criminal business of the State." *See* N.J.S.A. § 52:17B-106 ("[T]he Attorney General may supersede the county prosecutor for the purpose of prosecuting all of the criminal business of the State in said county, intervene in any investigation, criminal action, or proceeding instituted by the county prosecutor, and appear for the State in any court or tribunal for the purpose of conducting such investigations, criminal actions or proceedings as shall be necessary for the protection of the rights and interests of the State."); *see also* N.J.S.A. 52:17B-107; N.J.A.G. Directive No. 2006-5, ¶ 4; *State v. Harvey*, 176 N.J. 522, 532 (2003) (citing *State v. Marshall*, 123 N.J. 1, 176-77 (1991)) (explaining that it is at the Attorney General's discretion whether to supersede a county prosecutor under N.J.S.A. 52:17B-107a and applicable case law).

Here, the Court finds that the MCPO has not met its burden with respect to the first *Fitchik* factor – the funding factor. The Office of the Attorney General of the State of New Jersey has filed the instant motion to dismiss on behalf of the MCPO, suggesting that the State intends to defend and indemnify the MCPO. Defendant's briefing, however, has not directly addressed whether the State will actually defend and indemnify MCPO beyond the instant motion to dismiss or if the State would be liable for any judgment. *See, e.g.*, *Hof*, 2017 WL 3923296, at *3 (finding that state's representation of Defendants <u>and</u> its assertion in the state's brief that it would be required to defend and indemnify Defendants was sufficient to satisfy the first *Fitchik* factor). Furthermore, the acts and omissions alleged in the Complaint involve allegations of an intentional cover up by members of the MCPO, which could, if proven, amount

to willful misconduct.  Absent any representation that the State intends to defend and indemnify the MCPO beyond the instant motion to dismiss, Defendant has not met its burden to show that the *Fitchik* factor is satisfied.  Because the first *Fitchik* factor is the most important factor, the Court finds that Defendants have not meet their burden to show that they are entitled to Eleventh Amendment immunity, and the Court will deny the motion to dismiss on the basis of Eleventh Amendment immunity.

      *b.   MCPO is not a person under 42 U.S.C. § 1983*

That is not the end of the matter, however, as MCPO also argues that it is not a person amenable to suit under 42 U.S.C. § 1983.  In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Local governmental bodies and their officials, by contrast, are regarded as "persons" amenable to suit under § 1983. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  This inquiry is distinct from the analysis of sovereign immunity.  *See Estate of Lagano*, 769 F.3d at 857-58, n.8.

Here, the Court must determine whether MCPO was acting an arm of the State when it engaged in the misconduct at issue. That analysis is guided by *Coleman v. Kaye*, 87 F.3d 1491 (3d Cir. 1996).  In *Coleman*, the Third Circuit "held that 'when [New Jersey] county prosecutors engage in classic law enforcement <u>and</u> investigative functions, they act as officers of the State.'" *Estate of Lagano*, 769 F.3d at 855 (citing *Coleman*, 87 F.3d at 1505) (emphasis added). When, however, prosecutors "perform administrative functions 'unrelated to the duties involved in criminal prosecutions,'" *id.* (quoting *Coleman*, 87 F.3d at 1505–06), they are not acting as arms of the state but as county officials who remain subject to § 1983 suits. "The category of the actions taken, and not their alleged wrongfulness, is determinative."  *See Hof*, 2017 WL

3923296, at *5. Whereas personnel or staffing decisions fall within the administrative ambit of a prosecutor's office and therefore "flow from the County," *Evans v. City of Newark*, 2016 WL 2742862, at *9 (D.N.J. May 10, 2016), actions taken related to enforcing the criminal law fall within the "law enforcement and prosecutorial functions" of the county prosecutor's office and therefore constitute conduct as an arm of the state. *Id.* at *10. In order to determine whether the conduct at issue falls into "the ambit of 'classic law enforcement and investigative functions[]'" *Estate of Lagano*, 769 F.3d at 855 (citing *Coleman*, 87 F.3d at 1505), the Amended Complaint "must be read as a whole, and its averments and the inferences reasonably drawn from those averments must be viewed in the light most favorable to the plaintiff." *Id.* (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013)).

Here, the Court is persuaded that the offending conduct, *i.e.*, the failure to follow A.G. Directive No. 2006-5, is related to a prosecutor's classic law enforcement and/or investigative functions and is unlike the type of personnel and staffing decisions that are characterized as local matters. The MCPO undertook an internal affairs <u>investigation</u> of the circumstances surrounding Mr. Murphy's death, as is required by A.G. Directive No.: 2006-5, which mandates investigation "of any use of force by law enforcement officer involving death or serious injury to a person where the law enforcement officer [is] employed by a municipal or county agency", and is to be investigated by "the County Prosecutor's Office in the County of occurrence" (Am. Compl. at ¶ 50, A.G. Directive No. 2006-5), and found that no officer had engaged in any wrongdoing. (Am. Compl., ¶ 53.) The policy that the MCPO was required to follow is even described as a law enforcement directive in its full title: "Attorney General Law Enforcement Directive No. 2006-5." A.G. Directive No. 2006-5. The fact that the MCPO failed to follow the directive fully (allegedly on more than one occasion) as part of an alleged cover up of the use of excessive force

against Mr. Murphy does not render the conduct wholly unrelated to law enforcement and investigative functions or otherwise transform it into a local or administrative matter. *Cf. Lagano*, 769 F.3d at 855–56 (describing actions taken in the context of a personal and business relationship by an individual prosecutor and his office that exceeded the "classic law enforcement and investigative functions"). The Court will therefore grant the MCPO's motion to dismiss the Amended Complaint, finding that the MCPO is not a "person" under 42 U.S.C. § 1983 with respect to the offending conduct at issue.

### c. *Plaintiff's Request for Leave to Amend*

Plaintiff requests leave to amend his complaint to assert claims against the prosecutor in his or her personal capacity as well as to seek declaratory and injunctive relief against the MCPO. Although Plaintiff's claims for damages against the MCPO are dismissed <u>with prejudice</u>, the Court will grant leave to amend the complaint to assert claims against the MCPO for injunctive relief and against the prosecutor(s) in his or her personal capacity.[8]

### V.    <u>CONCLUSION</u>

For the reasons set forth in this Opinion, Defendant's motion to dismiss is granted.   The Claims for damages against the MCPO are dismissed with prejudice.  Plaintiff is granted leave to amend the Complaint to assert claims against the MCPO for injunctive relief and/or against the MCPO prosecutor(s) in his or her personal capacity.  An appropriate Order follows.

---

[8] With that said, the Court finds it to be inconceivable that Plaintiff could assert any claim for injunctive relief against the MCPO at this stage.  However, that is not the matter at hand in this Opinion.

Dated:  December 12, 2017

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge.