## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALAN MURPHY, as Administrator of the Estate of Arthur J. Murphy, Deceased, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 15-7102 (FLW) (TJB) |
| | : | |
| v. | : | |
| | : | |
| MIDDLESEX COUNTY et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |

**FREDA L. WOLFSON, U.S.D.J.**

### I.      INTRODUCTION

Plaintiff, Alan Murphy ("Plaintiff"), is the administrator of the estate of decedent, Arthur

J. Murphy ("Decedent"), who died after an altercation with staff at the Middlesex County Adult

Correctional Center on November 26, 2013.[1]  Presently before the Court is a motion by

defendants Andrew C. Carey ("Carey"), Michael Daniewicz ("Daniewicz"), George Trillhaase

("Trillhaase"), and Paul Miller ("Miller"), each employees of the Middlesex County Prosecutor's

Office ("MCPO"), (collectively, "the MCPO Defendants"), to dismiss the claims asserted against

them in Plaintiff's Third Amended Complaint.  (ECF No. 99.)  Plaintiff has opposed the motion,

(ECF No. 105), and the MCPO Defendants have filed a reply brief, (ECF No. 108).

Additionally, defendant Sheree Pitchford ("Pitchford"),[2] who was at all relevant times also an

---

[1]  I note that Plaintiff sometimes lists the date of the underlying incident as November 25, 2013. (*See, e.g.*, 3d Am. Compl., ECF No. 80 ¶¶ 52–55.)  Resolving this date discrepancy is unnecessary for the purposes of this Opinion.

[2]  It appears Pitchford is now a judge in the Superior Court of New Jersey, Civil Division, Middlesex County.

MCPO employee, has requested to join the MCPO Defendants' motion on the same bases asserted by them. (ECF No. 112.) Having considered the parties' submissions, and for the following reasons, Pitchford is permitted to join in the arguments advanced by the MCPO Defendants' motion and the motions to dismiss are GRANTED IN PART and DENIED IN PART.

## II.     BACKGROUND

### A. Underlying Circumstances

In late November 2013, Decedent was homeless and sought shelter in an abandoned building in Edison, New Jersey. (3d Am. Compl., ECF No. 80 ¶¶ 26–29.) Officers from the Edison Township Police Department removed Decedent from the building and located a shelter for him to spend the night. (*Id.* ¶¶ 26–29, 38.) When Decedent declined transport to the shelter, the officers charged him with criminal trespass under New Jersey Statutes Annotated § ("N.J.S.A.") 2C:18-3(a) and took him to the Middlesex County Adult Correction Center ("MCACC"). (*Id.* ¶¶ 38 & 40.)

Upon arriving at MCACC, Decedent answered general intake questions but refused to be fingerprinted. (*Id.* ¶ 42.) In response to Decedent's refusal, he was taken to a small "change-out room," where there were no cameras or video surveillance, to undergo a strip search. (*Id.* ¶¶ 43–44.) Seven corrections officers congregated in the room to observe Decedent's strip search. (*Id.* ¶ 45.) An altercation ensued when Decedent "clenched his fists," and up to nine corrections officers used force to subdue him. (*Id.* ¶¶ 46–48.) Following the altercation, Decedent was unresponsive, with blood flowing from his mouth, and he subsequently died. (*Id.* ¶¶ 48–52.)

The MCPO subsequently undertook an internal-affairs investigation of Decedent's death. (*Id.* ¶¶ 57–61.) Defendant Daniewicz, a sergeant in the MCPO, was the investigator assigned to

the case. (*Id.* ¶¶ 21, 64.) Plaintiff alleges that Daniewicz recommended that the investigation be closed and "did not recommend or require any other disposition, including 'Refer to Grand Jury.'" (*Id.*) Defendants Trillhaase and Miller were also sergeants with the MCPO and were Daniewicz's immediate and second-level supervisors, respectively. (*Id.* ¶¶ 22–23, 65–66.) Plaintiff alleges that they concurred with Daniewicz's recommendation to close the investigation and did not recommend any other disposition. (*Id.*) Defendant Pitchford was then an MCPO assistant prosecutor and acted as the "AP Supervisor" for the investigation into Decedent's death. (*Id.* ¶¶ 24, 67.) Plaintiff alleges that she also concurred with the decision to close the investigation and also did not recommend any other disposition. (*Id.*) Defendant Carey was then the Middlesex County Prosecutor, and Plaintiff alleges that he had final policy and oversight authority for internal-affairs investigations generally and for the investigation of Decedent's death specifically. (*Id.* ¶¶ 16–18, 62–63.)

### B. Procedural History

Plaintiff commenced this action on September 25, 2015, filing a complaint against Middlesex County, the warden of MCACC, and the corrections and police officers involved in the incident, all in both their individual and official capacities. (Compl., ECF No. 1.) The Complaint alleged claims against the police officers for false arrest and malicious prosecution (Counts I & II), against the corrections officers for due process violations, excessive force, conspiracy, and assault and battery (Counts III, IV, V, and VI), against Middlesex County and Warden Edmund Cicchi for supervisory and municipal liability (Count VII), and against all defendants for wrongful death (Count VIII). (*See* ECF No. 1.)

In September 2016, Plaintiff moved for leave to file an amended complaint, which would add the MCPO as a defendant to the claims for conspiracy (Count V), supervisory liability

(Count VII), and wrongful death (Count VIII).  (ECF No. 33.)  Middlesex County opposed the

amendment on the basis that it would be futile, arguing that the proposed amended complaint

failed to adequately plead a claim against the MCPO and that the MCPO was shielded by

prosecutorial immunity.  (ECF No. 34.)  On April 13, 2017, Magistrate Judge Tonianne J.

Bongiovonni issued a Memorandum Opinion and Order considering these arguments and

granting Plaintiff's motion to amend.  (ECF Nos. 37 & 38.)

The MCPO then filed a motion to dismiss the First Amended Complaint for lack of

jurisdiction and failure to state a claim.  (ECF No. 48.)  It argued, among other points, that it was

shielded by Eleventh Amendment sovereign immunity and that it could not be considered a

person subject to suit under 42 U.S.C. § 1983.  (Br. in Supp., ECF No. 48-1.)  This Court

rejected the MCPO's sovereign-immunity argument but dismissed the claims against it upon

finding that it was not acting as a person for § 1983 purposes.  (Op. (Dec. 12, 2017), ECF No.

61, at 6–16.)  The Court granted Plaintiff leave to again amend the complaint "to assert claims

against the MCPO for injunctive relief and/or against the MCPO prosecutor(s) in his or her

personal capacity."  (*Id.* at 16; Order, ECF No. 62.)

Plaintiff filed a Second Amended Complaint, which added Carey, Daniewicz, and John

Doe MCPO supervisors, all in their individual capacities,[3] as defendants to the conspiracy claim

(Count V), alleging that they "conspired to cover-up, not fully investigate and/or violated

mandatory investigatory protocol to ensure those involved would not be disciplined."  (2d Am.

Compl., ECF No. 65-1 ¶ 97.)  Plaintiff urged that New Jersey Attorney General Law

Enforcement Directive No. 2006-5 ("Directive 2006-5") required the issue to be presented to a

---

[3] Both the Second Amended Complaint and the Third Amended Complaint also impleaded
Carey in his official capacity for the purpose of seeking declaratory judgment.  (*See* ECF No. 65-
1 ¶ 16; ECF No. 80 ¶ 16.)  Plaintiff has now withdrawn the demand for declaratory judgment,
and it seems no claim remains against Carey in his official capacity.  (*See* ECF No. 105 at 8 n.1.)

grand jury unless the Division of Criminal Justice approved a finding that the undisputed facts showed the use of force was justifiable. (*Id.* ¶¶ 59–61.) Despite this, Plaintiff alleged that Carey, Daniewicz, and the Doe MCPO supervisors closed the file, without review by either a grand jury or the Division of Criminal Justice, "for the purpose of shielding the officers involved from exposure to discipline and/or criminal liability" and as part of a cover up to shield the officers directly involved. (*Id.* ¶¶ 62–67, 109–112.)

The Second Amended Complaint also added Carey as a defendant to the supervisory-liability claim (Count VII), alleging that he repeatedly violated, or permitted to be violated, required investigative protocol, thereby creating an environment of acquiescence to use of excessive force by law enforcement officers and where officers "operated without fear of discipline." (*Id.* ¶¶ 123–127.) The Second Amended Complaint made clear that Carey, Daniewicz, and the MCPO supervisor defendants were not defendants to the wrongful-death claim (Count VIII). (*Id.*, Count VIII.) Plaintiff subsequently filed the Third Amended Complaint, on consent of all parties, which primarily identified the previously unidentified MCPO supervisor defendants as Trillhaase, Miller, and Pitchford. (*See* ECF Nos. 78 & 80.) Thus, the claims presently asserted against the moving defendants are Count V, for conspiracy, which is asserted against all the MCPO Defendants, as well as the corrections-officer defendants, and Count VII, for supervisory and municipal liability, which is asserted against Carey, as well as Middlesex County and Warden Cicchi. (*See* ECF No. 80.)

## C. The Instant Motion

Presently before the Court is a motion by the MCPO Defendants to dismiss the Third Amended Complaint for lack of subject-matter jurisdiction and for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(1) and (6). (ECF No. 99.) They argue that Plaintiff's

claims against them are barred by prosecutorial, quasi-judicial, and qualified immunity. (Br. in Supp., ECF No. 99-1, at 13–26.) They further contend that Plaintiff lacks standing to assert claims against them and that he has failed to adequately plead constitutional claims. (*Id.* at 26–37.) Plaintiff has opposed the motion, (ECF No. 105), and the MCPO Defendants have replied, (ECF No. 108). Pitchford subsequently filed a letter seeking to join in the pending motion. (ECF No. 112). As the factual and legal issues seem to be the same, the Court will treat all arguments as applying equally to Pitchford.[4]

## III. ANALYSIS

### A. Standard for Dismissal Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits the Court to dismiss a proceeding for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). This includes cases where Eleventh Amendment immunity bars the plaintiff's claims, as the Court of Appeals for the Third Circuit has noted that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)).

### B. Standard for Dismissal Under Rule 12(b)(6)

In resolving a motion to dismiss under Rule 12(b)(6), "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth.*, 598

---

[4] For the sake of clarity, substantive explanations of the motion arguments are included in the Court's analyses of the issues, *infra*, rather than in this section.

F.3d 128, 134 (3d Cir. 2010). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In addition to the allegations of the complaint, a court may consider matters of public record, documents specifically referenced in or attached to the complaint, and documents integral to the allegations raised in the complaint. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

### C. 42 U.S.C. § 1983 Generally

As a general matter, a plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was

committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

### D.    Prosecutorial Immunity

The MCPO Defendants first argue that the claims against them must be dismissed as barred by the doctrines of prosecutorial and quasi-judicial immunity. (*See* ECF No. 99-1 at 13–18.) The burden to show that an immunity creates an absolute bar to the suit lies with the party seeking immunity. *Burns v. Reed*, 500 U.S. 478, 486 (1991). "The presumption is that qualified immunity rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," and, accordingly, the Supreme Court has noted that recognition of absolute immunity has been "'quite sparing.'" *Id.* at 486–87 (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988).

Generally, "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not subject to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *see also Burns*, 500 U.S. at 486. Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993). The applicability of prosecutorial immunity depends on the function performed, not the identity of the actor. *Forrester*, 484 U.S. at 229. Thus, an investigator performing investigative work related to a criminal proceeding enjoys the same scope of immunity that a prosecutor performing such tasks would. *See Davis v. Grusemeyer*, 996 F.2d 617, 631–32 (3d Cir. 1993), *overruled on other grounds by Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998); *see also Fuchs v. Mercer County*, 260 F. App'x 472, 475 (3d Cir. 2008).

8

The Supreme Court has explained that prosecutorial immunity is intended to apply to conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. It has provided the examples that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application[, but] absolute immunity does not apply when a prosecutor give advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citations omitted). "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273.

While the Supreme Court has noted that "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute," prosecutorial immunity has not been interpreted so expansively. *Burns*, 500 U.S. at 495. The Supreme Court has observed that acts preceding a prosecution inherently include considering "questions of whether to present a case to a grand jury" and "the obtaining, reviewing, and evaluating of evidence," but it has explained that, "[a]t some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court." *Imbler*, 424 U.S. at 431 n.33. While rejecting bright-line rules, the Court of Appeals for the Third Circuit has noted that the timing of the act in question is relevant, as "pre-indictment and post-conviction actions are more likely administrative than advocative." *Odd v. Malone*, 538 F.3d 202, 213 (3d Cir. 2008).

Magistrate Judge Bongiovonni assessed nearly the same question now before the Court when she denied Middlesex County's futility arguments and granted Plaintiff leave to file the First Amended Complaint. (*See* ECF No. 37.) Namely, Judge Bongiovonni analyzed the argument that the MCPO itself should be shielded from liability in connection with essentially the same claims now leveled against the individual MCPO defendants. (*See id.*) I find her reasoning on this issue thorough and convincing.

As noted by Judge Bongiovonni, a court determining the applicability of prosecutorial immunity must "narrowly define the act at issue." *Odd*, 538 F.3d at 213. The MCPO Defendants define their conduct in this instance as "performing an IA investigation to determine if the officers involved in the subject incident committed wrongdoing and then rendering their IA Report and corresponding decision not to discipline or prosecute such officers." (ECF No. 99-1 at 16.) Plaintiff characterizes the relevant conduct as "the failure to follow required investigative procedure." (ECF No. 105 at 19.)

I find Plaintiff's characterization more sound. The specific conduct underlying Plaintiff's claims is not the MCPO Defendants' decision not to initiate criminal proceedings against the officers involved in Decedent's death, but is, as pleaded, the decision not to follow Directive 2006-5's requirement to either submit the case to a grand jury or to seek approval from the Division of Criminal Justice to resolve the proceeding without grand jury. The claim is, thus, seemingly agnostic to the MCPO Defendants' *evaluation* of the evidence surrounding Decedent's death; it concerns, instead, their alleged decision to ignore Directive 2006-5.[5] This challenged conduct, a decision about the procedure employed in conducting an investigation,

---

[5] Importantly, I stress here that this decision does *not* constitute a holding that, if Plaintiff directly challenged the result of the investigation, the claims against the MCPO Defendants would be barred by prosecutorial immunity.

clearly falls more into the administrative realm than the advocative. Accordingly, I find that prosecutorial immunity presents no bar to Plaintiff's claims against the MCPO Defendants.

Furthermore, I conclude that they are not shielded by the doctrine of quasi-judicial immunity. As the Supreme Court made clear in *Butz v. Economou*, 438 U.S. 478 (1978), judicial immunity was originally recognized in the nineteenth century to protect judges from lawsuits challenging their decisions. *See id.* at 508–09. A 1927 Supreme Court case, case, *Yaselli v. Goff*, 275 U.S. 503 (1927), applied quasi-judicial immunity to protect federal prosecutors, and this result was then "reaffirmed" by *Imbler v. Pachtman*, in which the Supreme Court recognized the doctrine of prosecutorial immunity. *Id.* at 509–11; *see also Imbler*, 424 U.S. at 422–23 ("The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties."). Thus, it appears that quasi-judicial immunity does not exist as a distinct type of immunity from prosecutorial immunity, but is simply a different name given to the same common-law immunity when it is applied to persons performing judicial functions instead of those performing prosecutorial ones. *See Butz*, 438 U.S. at 508–09; *Imbler*, 424 U.S. at 422–23. The MCPO Defendants have not identified any post-*Imbler* federal cases that have applied quasi-judicial immunity to prosecutors or cases that have applied quasi-judicial immunity as conceptually distinct from prosecutorial immunity. Thus, I find that the MCPO Defendants do not enjoy any form of absolute immunity that shields them from Plaintiff's claims in this case.

**E. Failure to Plead a Claim**

Although the next argument in the order presented by the MCPO Defendants would be the question of qualified immunity, the Court finds it useful first to address the MCPO Defendants' contentions that Plaintiff has failed to adequately plead § 1983 claims. The Third

Amended Complaint includes a claim against the MCPO Defendants for conspiracy, which the Court construes as a conspiracy in violation of § 1983, and a claim against Carey for supervisory liability. (*See* ECF No. 80.)

I first address Plaintiff's claim for supervisory liability against Carey. Generally, personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Hence, there are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). Knowledge in a "failure to supervise" claim must consist of either "contemporaneous knowledge of the offending incident or knowledge of a prior patter of similar incidents."[6] *C.H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

---

[6] The Third Circuit has expressed doubt as to whether this theory of supervisory liability survived the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which held that

It appears that Plaintiff expressly asserts a policy-maker theory of supervisory liability

against Carey. (*See* ECF No. 80 ¶ 142 ("The above-described policies, practices and customs

demonstrated a deliberate indifference on the part of the policy makers of the County of

Middlesex and the policy makers of the Middlesex County Prosecutor's Office, to the

constitutional rights of Mr. Murphy alleged herein.").) Under a policy-maker theory, a person

who has final policy-making authority may be liable under § 1983 if that person establishes a

policy that is unconstitutional and that injures the plaintiff. *Chavarriaga*, 806 F.3d at 223;

*Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "[T]o establish a claim against a policy

maker under § 1983 a plaintiff must allege and prove that the official established or enforced

policies and practices directly causing the constitutional violation."[7] *Chavarriaga*, 806 F.3d at

223. Alternatively, "[a] course of conduct is considered to be a custom when, though not

authorized by law, such practices of state officials are so permanent and well-settled as to

virtually constitute law." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990),

*superseded in part by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166,

105 Stat. 1072; *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).

---

"purpose rather than knowledge is required to impose *Bivens* liability . . . for an official charged
with violations arising from his or her superintendent responsibilities." *Id.* at 677; *see Jankowski
v. Lellock*, 649 F. App'x 184, 187 (3d Cir. 2016.) The Court need not resolve the issue at this
time.

[7] Similarly, a plaintiff may claim that a supervisory defendant failed to create proper policy, in
which case the plaintiff must, to establish liability, "(1) identify the specific supervisory practice
or procedure that the supervisor has failed to employ, and show that (2) the existing custom and
practice without the identified, absent custom or procedure created an unreasonable risk of the
ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the
supervisor was indifferent to the risk, and (5) the underling's violation resulted from the
supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg
Township*, 269 F.3d 205, 216 (3d Cir. 2001).

The Third Amended Complaint adequately pleads a claim of supervisory liability against Carey as a policy maker. First, it alleges that Carey is, in fact, a policy maker, noting that he has "wide ranging authority over the law enforcement community in Middlesex [C]ounty," asserting that he "was at all times material herein responsible for the implementation of the New Jersey Attorney General directives relating to internal affairs investigations," and alleging that he "had final policy and oversight authority for internal affairs investigations conducted by the Middlesex County Prosecutor's Office." (ECF No. 80 ¶¶ 16–18.) Second, it identifies a specific policy or custom allegedly promulgated by Carey, that being a policy or custom of not complying with Directive 2006-5 by closing investigations without referral either to a grand jury or the Division of Criminal Justice, or, framed in the negative, a failure to implement a policy ensuring full compliance with the Directive. (*Id.* ¶¶ 17, 19, 123–25, 128–29.) On the issue of causation, the Third Circuit has recognized that "it is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future." *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990); *see also Beck*, 89 F.3d at 974–75.

I find that the Third Amended Complaint has sufficiently pleaded that, by creating a custom or policy whereby use-of-force investigations were routinely closed without complying with Directive 2006-5, Carey showed deliberate indifference to the fact that lack of enforcement would result in an increased use of unjustified force and that this effect could result in deaths, including Decedent's. (*See* ECF No. 80 ¶¶ 122–47.) Furthermore, the supervisory-liability allegations here are strikingly similar to allegations that the Third Circuit found sufficient in *Beck v. City of Pittsburgh*, 89 F.3d 966, which, though based on *Monell* liability, involved essentially the same test applied here. *Id.* at 971–75. The MCPO Defendants have not presented any particular way of distinguishing the facts of *Beck*, in which the plaintiff claimed that a police

department's systematic failure to meaningfully review excessive-force allegations led to his beating by an officer, and the allegations in this case. Of course, whether Plaintiff can actually prove these allegations poses a question for another day.

I next address the conspiracy claim asserted against all MCPO Defendants. To state a claim for conspiracy under § 1983, a plaintiff must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999), *superseded in part by statute on other grounds as recognized by P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009). A § 1983 claim for civil-rights conspiracy must show an understanding or "meeting of the minds" with facts demonstrating agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008). If there is a lack of direct evidence, an agreement or meeting of the minds may be established by circumstantial evidence, such as by identifying interactions between the conspirators, the approximate timing of the agreement, the parties in agreement, and the period or object of the conspiracy. *Id.*

While an agreement or understanding may be inferred from circumstantial evidence, the Third Amended Complaint includes no specific allegations from which an agreement or understanding involving the MCPO Defendants could be shown or even inferred. (*See* ECF No. 1.) Instead, it relies entirely on the merely conclusory allegation that the MCPO Defendants "conspired and acted with deliberate indifference" to Decedent's rights. (*See id.* ¶ 113.)

Even more problematic, however, is the intersection of the alleged concerted action and the alleged deprivation of a constitutional right that was purportedly the conspiracy's object. Plaintiff is quite clear in his briefing that the conspiracy claim seeks to vindicate Decedent's rights to be free from excessive force and punishment prior to an adjudication of guilt. (ECF No.

80 ¶¶ 113–114; ECF No. 105 at 26, 39.) The concerted action alleged against the MCPO

Defendants, however, is each defendant's decision to close (or approve the closure of) the

investigation into the use of force against Decedent without following the requirements of

Directive 2006-5. (*See id.* ¶¶ 109–113.) This presents an obvious temporal problem in

Plaintiff's theory of liability' that is, how could the MCPO Defendants' actions as to the

investigation into the use of force against Decedent have caused that use of force against

Decedent? And, how could the MCPO Defendants have agreed to violate Decedent's

constitutional rights after those alleged rights violations had already occurred? These issues

alone seem to demonstrate fatal flaws in Plaintiff's conspiracy allegations against the MCPO

Defendants.

Indeed, Plaintiff's conspiracy claim against the MCPO Defendants seems, as a whole,

somewhat amorphous and unclearly defined. While insisting that the federal rights in question

are those against applications of force or punishment, Plaintiff simultaneously alleges that the

object of the conspiracy was "to violate the Decedent's constitutional rights and cover-up the

wrongdoing of the officers involved." (ECF No. 80 ¶ 113.) The Third Circuit has recognized a

theory of a § 1983 conspiracy to cover up constitutional violations, but this occurs when the

defendants have conspired to prevent a potential plaintiff from obtaining the information needed

to make a valid legal claim, and it implicates the First Amendment right of access to the courts.

*See Jutrowski v. Township of Riverdale*, 904 F.3d 280, 295–98 (3d Cir. 2018). Plaintiff does not

assert a violation of his access to the courts, and, in any case, he has not alleged that the MCPO

Defendants interfered with his ability to bring a civil suit, but instead has claimed that they

violated required procedure while rendering their decision not to pursue criminal proceedings

against the officers involved in Decedent's death. (*See* ECF No. 80 ¶¶ 107–116.) As discussed

further below, there is no constitutional right to the criminal prosecution of a third party. *See Leeke v. Timmerman*, 454 U.S. 83, 87 (1981).

A potential way of connecting the MCPO Defendants' acts with the allegedly resulting rights violations would be to construe the Third Amended Complaint as alleging that the MCPO Defendants agreed to *consistently* disregard Directive 2006-5, resulting in a comparable lack of discipline for excessive force, and thus potentially causing officers to employ such force against Decedent. These allegations, however, appear to be a policy-maker claim for supervisory liability, which was already addressed above. Plaintiff has not alleged that all of the MCPO Defendants were responsible for creating a policy or custom, nor that they occupied positions as policy makers. Accordingly, I find that Plaintiff has failed to state a § 1983 conspiracy claim against the MCPO Defendants and that Count V must be dismissed against them under Rule 12(b)(6).

### F. Qualified Immunity

I now return to the MCPO Defendants' argument that Plaintiff's claims must be dismissed on the basis of qualified immunity. (ECF No. 99-1 at 19–26.) "Qualified immunity is 'an entitlement not to stand trial or face the burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Under this doctrine, a government official is immune from claims for damages unless, interpreting the allegations most favorably to the plaintiff, they show (1) that the official violated the plaintiff's constitutional rights and (2) that the constitutional right violated was clearly established. *Id.* at 201; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

should have known."). A right is considered clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alterations omitted); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). This threshold is met when existing precedent has "'placed the statutory or constitutional question beyond debate,'" though this "'do[es] not require a case directly on point.'" *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). There is no question that a relevant decision by the Supreme Court renders a right clearly established but, "if none exists, it may be possible that a 'robust consensus of cases of persuasive authority' in the Court of Appeals could clearly establish a right for purposes of qualified immunity." *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *Barkes*, 135 S. Ct. at 2044). The burden of establishing the affirmative defense of qualified immunity lies with the party seeking to invoke it. *Thomas v. Independence Township*, 463 F.3d 285, 292 (3d Cir. 2006); *Hicks v. Feeney*, 850 F.2d 152, 159 (3d Cir. 1988).

Here, the MCPO Defendants argue that Plaintiff relies on a putative constitutional "right to an adequate or exhaustive investigation" and that no such right has been found to exist, much less to have been clearly established. (ECF No. 99-1 at 20–26.) The MCPO Defendants are correct that there is no recognized constitutional right to a criminal investigation or prosecution of a third party. *See Fuchs*, 260 F. App'x at 475. The rights that Plaintiff has consistently identified as the basis of his claims, however, are the rights to be free of excessive force and punishment before an adjudication of guilt. (*See* ECF Nos. 80 & 105.) As discussed above, the theory that explicitly underlies the sufficiently pleaded supervisory-liability claim against Carey is that he created or continued a policy or custom of concluding internal-affairs investigations

without complying with Directive 2006-5, which caused more applications of excessive force generally and the use of excessive force against Decedent specifically.[8] (*See* ECF No. 80 ¶¶ 121–129.)

To show that the supervisory-liability claim against Carey is barred by qualified immunity, therefore, the MCPO Defendants bear the burden of demonstrating that there was not a clearly established right to be free from excessive force or punishment prior to an adjudication of guilt, in the specific context of allegations that a policy or custom of lax or improper disciplinary enforcement encouraged excessive force or punishment and resulted in the specific act of force or punishment challenged. *See Mullenix*, 136 S. Ct. at 308 (explaining that assessment of the "clearly established" issue "must be undertaken in light of the specific context of the case" (internal quotation marks omitted)). The MCPO Defendants have not made arguments on this point, (*see* ECF Nos. 99, 108), and, accordingly, have not met their burden. I note that Plaintiff's theory of supervisory liability appears consistent with the rights recognized by the Third Circuit in *Beck v. City of Pittsburgh*, 89 F.3d 966, and that other circuits have permitted claims based on similar theories. *See, e.g., Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995) (alleged failure to address patterns of excessive force by officers); *Parrish v. Luckie*, 963 F.2d 201 (8th Cir. 1992) (alleged failure to investigate claims of violence and sexual misconduct by police officers); *Harris v. City of Pagedale*, 821 F.2d 499 (8th Cir. 1987) (alleged failure to investigate claims of sexual misconduct by officers). Thus, to establish qualified immunity, the MCPO Defendants are expected to address these cases and any similar cases in showing whether the rights implicated by this case may be considered clearly established. These

---

[8] The Court has also noted that a similar theory may underlie Plaintiff's conspiracy claim against all the MCPO Defendants, which this Opinion dismisses for failure to plead a claim. *See supra* pp. 15–16.

defendants have not done so. For these reasons, the portion of the motion seeking dismissal on the basis of qualified immunity is denied.

### G. Standing Arguments

The MCPO Defendants also argue that the claims against them must be dismissed for lack of standing. (ECF No. 99-1 at 26–29.) Specifically, they contend that Plaintiff lacks standing to challenge MCPO policies, as he was neither prosecuted nor threatened with prosecution. (*Id.*) The cases cited by the MCPO Defendants in support of this argument all involve attempts to hold prosecutorial officials civilly liable for their failures to initiate prosecutions against third parties and reach their conclusions based on the lack of a connection between the conduct alleged and the alleged harm to the plaintiff. *See Leeke*, 454 U.S. 83; *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973); *Calhoun v. Vicari*, No. Civ. A. 05-4167(GEB), 2005 WL 2372870 (D.N.J. Sept. 26, 2005). I do not construe these cases as creating a universal rule that prosecutors or their employees may never be sued for any act unless they have commenced a prosecution against the plaintiff (or threatened to). As already explained in this opinion, the gist of Plaintiff's surviving claim against Carey, is not that Decedent or Plaintiff were directly harmed by the MCPO Defendants' failure to prosecute the officers involved in Decedent's death, but, instead, that a policy or custom of failing to comply with Directive 2006-5 created an environment that resulted in the applications of force against Decedent. *See supra* pp. 12–14. As noted above, the Third Circuit has found a potential causal relationship between systematic tolerance of excessive force and individual instances excessive force. *See Bielevicz*, 915 F.2d at

851. Thus, dismissal on the basis that Plaintiff lacks standing to assert claims against the MCPO Defendants is denied.[9]

## IV.   CONCLUSION

For the foregoing reasons, the MCPO Defendants' motion to dismiss the Amended Complaint, (ECF Nos. 99), and Pitchford's application for relief on the same bases, (ECF No. 112), are GRANTED IN PART, insofar as the conspiracy claim, in Count V, is DISMISSED WITHOUT PREJUDICE as against Carey, Daniewicz, Trillhaase, Miller, and Pitchford for failure to state a claim, and the motions are DENIED IN PART, insofar they seek dismissal of the supervisory-liability claim against Carey in Count VII.  An appropriate order follows.

DATED:  January 17, 2019

FREDA L. WOLFSON
United States District Judge

---

[9]  The MCPO Defendants also argue that Plaintiff lacks standing to seek declaratory relief.  (ECF No. 99-1 at 29–32.)  As Plaintiff has withdrawn that particular demand for declaratory relief, I need not address these arguments.